```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :
                 - against -                               :
                                                           :   11-CR-836 (VSB)
                                                           :
YESID RIOS SUAREZ,                                         :   **OPINION & ORDER**
                                                           :
                                      Defendant.           :
                                                           :
-----------------------------------------------------------X
```

VERNON S. BRODERICK, United States District Judge:

Before me is the pro se motion of Yesid Rios Suarez ("Defendant" or "Suarez") for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Because Defendant has failed to demonstrate extraordinary and compelling circumstances that would warrant the reduction of his sentence, Suarez's motion is DENIED.

**I.    Background and Procedural History**[1]

From around 1992 to 2011, Suarez was involved with an international narcotics trafficking conspiracy. (PSR ¶ 1.) Suarez and others operated clandestine laboratories for the conversion of cocaine base into cocaine hydrochloride. (*Id.* ¶ 8.) Suarez and other leaders of this operation worked closely with members of the Revolutionary Armed Forces of Colombia (the "FARC"), who provided the raw materials for the drug labs and aided in the distribution of the finished product. (*Id.* ¶¶ 8–10.) Beginning in 2001, Suarez's operation reached an agreement with the FARC secretariat under which the operation run by Suarez and others had the exclusive right to purchase and process all cocaine base produced in the Aracua department of

---

[1] The facts contained in this section are taken from Defendant's Corrected Presentence Investigation Report ("PSR"), as well as other materials identified herein.

Colombia. (*Id.* ¶ 9.) Suarez also helped operate clandestine landing strips for planes to carry hundreds of kilograms of cocaine out of Colombia and return with large shipments of currency, including millions of United States dollars. (*Id.* ¶¶ 8, 10.)

On September 29, 2011, an Indictment was returned against Suarez, charging him with participation in a conspiracy to import cocaine. (Doc. 3.) In November 2011, the United States transmitted a formal request to Colombia for the extradition of Suarez. *See United States v. Suarez*, 791 F.3d 363, 365 (2d Cir. 2015). Suarez challenged his extradition in court in Colombia, and in October 2012, the Colombian Ministry of Justice issued a resolution ordering Suarez's extradition on the condition that the United States provide certain assurances, including that Suarez would not be subjected to life imprisonment. *Id.* In March 2013, the United States provided a Diplomatic Note to the Colombian government, stating in part that "[a]lthough the maximum statutory penalty for the charge for which extradition was approved is life imprisonment, the Government of the United States assures the Government of Colombia that a sentence of life imprisonment will not be sought or imposed." *Id.*

Suarez was extradited to the United States and entered into the custody of the Bureau of Prisons on April 25, 2013. (PSR ¶ 5.) On February 4, 2014, Suarez pleaded guilty to the conspiracy charge in the Indictment. (Doc. 48.)

On May 2 and 7, 2017, Judge Katherine B. Forrest held a hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), to determine whether certain allegations about Suarez's conduct could be proven by a preponderance of the evidence and therefore considered at sentencing. Two witnesses testified on behalf of the Government at the *Fatico* hearing. (Doc. 52 at 1.) Judge Forrest credited their testimony, and found by a preponderance of the evidence that: (1) Suarez was the leader of a criminal enterprise that involved more than five participants;

(2) the conspiracy involved thousands of kilograms of cocaine; (3) Suarez was directly involved in the importation of cocaine and committed the offense as part of his livelihood; (4) Suarez caused members of the conspiracy to carry weapons; and (5) Suarez directed the use of violence, specifically the murder of two men. (*Id.* at 4–6.) Based on these findings, Judge Forrest determined that the Guidelines range was life imprisonment. (*Id.* at 3.) On June 27, 2014, Judge Forrest sentenced Suarez to a term of 648 months. (Doc. 63.) At sentencing, Judge Forrest "acknowledge[d] [that this] is effectively a life sentence." (Doc. 69 ("Sentencing Tr.") at 48:18–19.)

On July 1, 2014, Suarez filed a direct appeal, arguing that his sentence must be set aside because he was extradited on the condition that a sentence of life imprisonment will not be sought or imposed. (Doc. 64.) Specifically, Suarez argued that a 648-month—54-year—sentence is effectively a life sentence and therefore a violation of the agreement reached between the United States and Colombia. On June 30, 2015, the Second Circuit affirmed the judgment of the district court, finding that Suarez lacked prudential standing to raise an alleged violation of the extradition agreement unless the challenge is first raised by the extraditing nation. *Suarez*, 791 F.3d at 367–68.

On January 6, 2017, Suarez filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (Doc. 101.) In that motion, Suarez contended that his sentence should be vacated because: "(1) his plea was neither knowing nor voluntary; (2) he received ineffective assistance of counsel when deciding whether and how to plead guilty; (3) his sentence violates the terms of the extradition agreement; and (4) the United States government's recent reclassification of [FARC] warrants resentencing." (Doc. 107 at 1.) On November 27, 2017, Judge Forrest denied

3

the motion.[2]  (*Id.*)

Suarez appealed the denial of his habeas motion. *See Suarez v. United States*, No. 17-CV-133, Doc. 7 (S.D.N.Y. Jan. 29, 2018).  The Second Circuit vacated Judge Forrest's opinion to the extent it sua sponte denied Suarez's ineffective assistance claim, and remanded for further consideration of the ineffective assistance claim after securing a response from the Government and an affidavit from Suarez's former attorney. *See Suarez v. United States*, No. 18-280, 2018 WL 3642087 (2d Cir. May 31, 2018).

After obtaining a response from the Government and an affidavit from Suarez's former attorney, I referred the habeas petition to Magistrate Judge Stewart D. Aaron, who issued a Report and Recommendation recommending that I deny Suarez's ineffective assistance claim. *See Suarez v. United States*, No. 17-CV-133, 2019 WL 8063920 (S.D.N.Y. June 3, 2019).  I adopted the Report and Recommendation in full on February 26, 2020.  *Suarez v. United States*, No. 17-CV-133, 2020 WL 918608 (S.D.N.Y. Feb. 26, 2020).  On March 16, 2020, Suarez moved for reconsideration of my February 26, 2020 opinion, and I denied Suarez's motion for reconsideration on April 11, 2022.  *Suarez v. United States*, No. 17-CV-133, 2022 WL 1078436, at *1 (S.D.N.Y. Apr. 11, 2022).  Suarez did not appeal.

On September 27, 2022, Suarez submitted a request for compassionate release to the warden of his facility, which was denied.  (Doc. 132, Ex. A.)  Suarez again submitted a compassionate release request to the warden on October 4, 2023, which was again denied.  (*Id.*)

On July 1, 2024, Suarez filed a motion for compassionate release or a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. 132 ("Def. Mem.").)

---

[2] On September 13, 2018, Suarez's case was reassigned to me.

4

## II.     Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  Section 3582(c)(1)(A)(i) of Title 18 of the United States Code, the compassionate release statute, provides one such exception.  The compassionate release statute permits a court to "reduce" a term of imprisonment "if it finds that (1) the defendant's circumstances present extraordinary and compelling reasons to warrant a reduction, (2) the factors proscribed in 18 U.S.C. § 3553(a) do not outweigh such extraordinary and compelling reasons, and (3) a reduction would be consistent with the relevant policy statements of the Sentencing Commission, *i.e.*, the policy statement in [USSG] § 1B1.13." *United States v. Van Putten*, 726 F. Supp. 3d 245, 251 (S.D.N.Y. 2024) (citing 18 U.S.C. § 3582(c)(1)(A)).  Additionally, "[t]o obtain compassionate release, a defendant must first have 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf' or allowed 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility' before bringing his motion." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

"[USSG] § 1B1.13(b) enumerates six circumstances that, when considered either individually or in combination, a court may find amount to extraordinary and compelling reasons." *United States v. Garcia*, 758 F. Supp. 3d. 47, 51 (E.D.N.Y. 2024).  Specifically, the policy statement provides that any of the following may be relevant to a finding of extraordinary and compelling circumstances:  (1) the "medical circumstances of the defendant"; (2) the defendant is "at least 65 years old," is "deteriorat[ing]" with age, and has served the lesser of 10 years or 75% of his sentence; (3) the "family circumstances of the defendant"; (4) whether the defendant was physically or sexually abused while in custody; (5) whether "any other

5

circumstance or combination of circumstances" exist that "are similar in gravity" to the preceding four circumstances; and/or (6) the "defendant received an unusually long sentence and has served at least 10 years" and a subsequent change in law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." USSG § 1B1.13(b)(1)–(6). "[Section] 1B1.13 also provides that a court should reduce a defendant's sentence only after determining that 'the defendant is not a danger to the safety of any other person or to the community.'" *Garcia*, 758 F. Supp. 3d at 52 (citation omitted).

The factors set forth in 18 U.S.C. § 3553(a) to be considered in connection with a motion for compassionate release include, among other things, "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the kinds of sentences available"; and "the need to avoid unwarranted sentence disparities." *See* 18 U.S.C. § 3582(c)(1)(A) (citing 18 U.S.C. § 3553(a)). It is the defendant's burden to show "extraordinary and compelling circumstances and that a reduction is warranted under [the] § 3553(a) sentencing factors." *Garcia*, 758 F. Supp. 3d at 52 (citing *United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021)). "[A] district court's discretion in this area—as in all sentencing matters—is broad." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) (citation omitted).

### III. Discussion

As a preliminary matter, Suarez has requested compassionate release from the warden of his facility twice, and both requests were denied. (*See* Def. Mem., Ex. A.) Since those denials, "Defendant has allowed the 30-day period to lapse before bringing this motion . . . and therefore it is properly before this Court." *Van Putten*, 726 F. Supp. 3d at 251.

6

Suarez raises several circumstances that he argues constitute extraordinary and compelling reasons to reduce his sentence: (1) his sentence violates the United States's extradition agreement with Colombia; (2) his sentence is grossly disproportionate with those who are similarly situated; (3) he suffers from chronic medical conditions; (4) his productive activities and refusal to engage in violence while in prison, despite the brutality around him, demonstrate rehabilitation; and (5) he is unlikely to recidivate. (Def. Mem. at 4–7.)

First, Suarez cannot obtain compassionate release on the basis that his sentence violates the agreement reached between the United States and Colombia, assuming that this reason would fit under the catchall "any other circumstance" of "similar [] gravity" category in the Guidelines. USSG § 1B1.13(b)(5). Suarez asserts that "this Court now has the opportunity to recognize the misapplication of law and grant relief accordingly, highlighting . . . the clear treaty violation." (Def. Mem. at 4–5.) This argument does not raise a "new mitigating 'extraordinary and compelling' circumstance[]," *United States v. Capers*, No. 15-CR-607, 2023 WL 7626560, at *5 (S.D.N.Y. Nov. 14, 2023) (internal quotation marks omitted), and instead rehashes an argument that was considered by Judge Forrest during sentencing, (*see* Sentencing Tr. at 45–49), addressed by Judge Aaron in connection with Suarez's ineffective assistance of counsel claim, *see Suarez*, 2019 WL 8063920, at *6–9, and rejected by the Second Circuit on appeal, *see Suarez*, 791 F.3d at 367–68. A defendant — particularly one who has made full use of his direct appeal and collateral challenge opportunities without success — may not use a compassionate release motion to obtain a 'third bite at the apple,' as it were, to challenge his conviction." *United States v. Rosario*, No. 96-CR-126-23, 2024 WL 3521851, at *6 (S.D.N.Y. July 24, 2024) (citing *United States v. Fernandez*, 104 F.4th 420, 430 (2d Cir. 2024)); *see also United States v. Roney*, 833 F. App'x 850, 854 (2d Cir. 2020) (summary order) ("[A] compassionate-release motion is not an

7

opportunity to second guess or to reconsider the sentencing court's original decision." (internal quotation marks omitted)).

On appeal, the Second Circuit found that Suarez lacked prudential standing to challenge his sentence on the basis of the extradition agreement unless Colombia first makes an official protest. *Suarez*, 791 F.3d at 367–68. Judge Kearse, concurring in the judgment, noted there is precedent for Colombian defendants receiving term-of-years sentences that are effective life sentences despite diplomatic assurances that they would not receive a sentence of life imprisonment. *Id.* at 368–69 (Kearse, J., concurring). In *United States v. Lopez-Imitalo*, a case that was decided by the Second Circuit before Suarez's extradition agreement was brokered, the Court stated that "[h]ad the respective governments intended the Diplomatic Note to be an assurance that the U.S. government would not request a determinate sentence exceeding [defendant's] expected lifespan, they could have drafted the note to say that." 305 F. App'x 818, 819 (2d Cir. 2009) (summary order). No such condition can be found in the extradition agreement reached regarding Suarez. In any event, this issue has been conclusively addressed by the Second Circuit on appeal, and despite Suarez's argument to the contrary, I have no authority to revisit the Second Circuit's conclusions.

Second, Suarez asserts that his sentence is "grossly disproportionate with those who are similarly situated." (Def. Mem. at 5–6.) Defendant does not provide any examples of individuals who are similarly situated to him and who received significantly lighter sentences. Instead, Suarez points out that under certain United States Sentencing Commission studies, the average sentence for murder is 25 years.[3] (*Id.* at 7.) Even if I were to accept that assertion,

---

[33] Although Suarez references studies, he does not provide a citation for such studies. Nonetheless, I take judicial notice that the 2023 Annual Report of the United States Sentencing Commission, which is the last annual report that would have been published prior to Suarez submitting this motion, states that the average sentence for murder is 285 months, or 23.75 years. United States Sentencing Commission, *2023 Annual Report*, at 17,

8

Suarez was found to be a leader of a conspiracy to import thousands of kilograms of cocaine into the United States over multiple decades, who ordered other members of the conspiracy to carry firearms and commit violent acts, including two murders. (*See* Doc. 52 at 7.) Hence, a person being sentenced for a murder is not similarly situated to Suarez, and statistics about murder sentences are irrelevant. Furthermore, Suarez borrows the "gross disparity" language from USSG § 1B1.13(b)(6), which states that a sentence reduction may be appropriate where "defendant received an unusually long sentence and has served at least 10 years" and a subsequent change in law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." Suarez identities no such change in the law.

    Third, Suarez states that he is 55 years old, and due to the life expectancy of Colombian males being 58 years and him suffering from a plethora of chronic conditions, there is an "elevate[d] . . . risk of Petitioner possibly dying in prison." (Def. Mem. at 5.) Suarez states that he has been diagnosed with asthma, high cholesterol, arthritis, glaucoma, hypertension, hypoglycemia, obesity, a hernia, and a retina issue that affects his eye socket. (*Id.* at 5.) He also notes that he has as a history of cancer in his family and lists fifteen medications he takes to manage his conditions. (*Id.*) Suarez does not submit any medical records or describe the impact of these conditions on his health and day-to-day life, instead saying that his "health issues are numerous and speak for themselves." (Def. Mem., Ex. 4.) Suarez's claims of chronic illnesses, without any documentation, are insufficient to satisfy his burden of proof to show extraordinary and compelling reasons justifying compassionate release. *See* USSG § 1B1.13(b)(1) (establishing that extraordinary and compelling reasons exist when the "defendant is suffering

---

https://www.ussc.gov/about/annual-report-2023.

from a terminal illness" or when the defendant is suffering from a serious physical or medical condition, functional or cognitive impairment, or deterioration due to aging "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover"); *see also, e.g.*, *United States v. Castelle*, No. 18-CR-15, 2022 WL 4536798, at *2 (S.D.N.Y. Sept. 28, 2022) (finding that where defendant alleged that he suffered from chronic disease but "offer[ed] no medical records or any other evidence to support his claim," he could not carry his burden to show extraordinary and compelling reasons justifying compassionate release).

  Next, Suarez claims that there have been numerous violent incidents at USP McCreary during his incarceration, contending that "it is virtually impossible for a prisoner to survive in such an environment without succumbing to the pressures and conditions of the setting." (Def. Mem. at 6.) Although Suarez does not point to any incidents in which he was the victim of violence, he asserts that his ability to serve over ten years in prison without accruing any incident reports or succumbing to the violence of his environment, alongside his completion of over 45 courses while incarcerated, demonstrates that he is committed to rehabilitation. (*See* Def. Mem. at 6, Ex. 2.) I am sympathetic to the brutality of the environment Suarez describes, and his refusal to engage in violence and use of his time to better himself while incarcerated are commendable. Nonetheless, the law is clear that "generalized statements about prison conditions untethered to compelling specifics of a defendant's particular circumstances do not make the defendant's conditions 'extraordinary and compelling.'" *United States v. Cave*, No. 18-CR-689-1, 2024 WL 3888737, at *3 (S.D.N.Y. Aug. 21, 2024) (alteration adopted) (quoting *United States v. Santana*, No. 12-CR-790, 2023 WL 2625790, at *4 (S.D.N.Y. Mar. 24, 2023)). *Cf. United States v. Rodriguez*, No. 24-1569, 2025 WL 2301077, at *3 (2d Cir. Aug. 11, 2025) (affirming

10

district court's determination that defendant did not identify extraordinary and compelling circumstances, in part because defendant's "medical conditions did not warrant release because all inmates faced the risk of COVID-19"). Furthermore, the law is clear that "rehabilitation alone shall not be considered an extraordinary and compelling reason" for a sentence reduction. *Brooker*, 976 F.3d at 238 (quoting 28 U.S.C. § 994(t)) (alterations adopted and emphasis omitted). "Indeed, every inmate should strive for a productive institutional record while incarcerated because that is what is expected." *United States v. Saleh*, No. 93-CR-181, 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020), *aff'd sub nom. United States v. Elgabrowny*, No. 20-2254, 2022 WL 1701515 (2d Cir. May 27, 2022).

Finally, Suarez's argument that he is unlikely to recidivate due to his age—he is now 55—is similarly unavailing. "While it is true that defendants who are in their fifties have lower recidivism rates than younger defendants, there is still a significant rate of recidivism in this age bracket." *United States v. Williams*, No. 00-CR-1008, 2023 WL 1767261, at *3 (S.D.N.Y. Feb. 3, 2023), *aff'd*, No. 23-6154, 2024 WL 3450126 (2d Cir. July 18, 2024). Furthermore, Suarez's crimes "were not crimes of youth." *United States v. Porter*, No. 96-CR-515, 2024 WL 2159850, at *6 (S.D.N.Y. May 14, 2024). While Suarez got involved in the drug trafficking operation in his mid-twenties, he continued his involvement well into his forties. Suarez's age does not present an "extraordinary and compelling reason[]" to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A).

Even considering all of Suarez's arguments collectively, I find that Suarez has not offered extraordinary or compelling circumstances warranting compassionate release. Furthermore, even if Suarez had demonstrated extraordinary and compelling circumstances, the factors under 18 U.S.C. § 3553(a) counsel against reducing his sentence. Defendant committed extremely

serious crimes, including ordering the death of two people and running an international drug trafficking ring for almost two decades. Because Suarez has failed to demonstrate extraordinary and compelling circumstances that would warrant the reduction of his sentence and early release, his compassionate-release motion is DENIED.

## IV.   Conclusion

For the foregoing reasons, Defendant's motion is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at Doc. 132 and to mail a copy of this Opinion & Order to Suarez (Reg. No. 92000-054) at USP McCreary, U.S. Penitentiary, P.O. Box 3000, Pine Knot, Kentucky 42635.

SO ORDERED.

Dated: September 12, 2025
      New York, New York

*/s/ Vernon Broderick*
Vernon S. Broderick
United States District Judge